IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>PMC MARKETING CORP<br><br><br>Debtor(s)<br><br>NOREEN WISCOVITCH RENTAS<br>CHAPTER 7 TRUSTEE<br><br>Plaintiff<br>vs.<br><br>VILLA BLANCA VB PLAZA LLC<br><br>Defendant(s) | CASE NO.  09-02048<br>Chapter   7<br><br>Adversary No. 12-00071<br><br><br><br><br><br><br><br><br>FILED & ENTERED ON 12/2/2014 |

OPINION AND ORDER

Before this court is Defendant's Motion for Summary Judgment and Statement of Uncontested Facts [Dkt. No. 30], Plaintiff/Trustee's Opposition to Motion for Summary Judgment and Counter Motion for Summary Judgment [Dkt. No. 33], and Plaintiff's Response to Defendant's Statement of Uncontested Facts and Counter Statement of Uncontested Facts [Dkt. No. 34].  The Plaintiff's amended opposition and statement of facts [Dkt. No.'s 38, 39] were filed without leave of court, forty (40) days after Plaintiff's initial response.  As such, the court does not accept these pleadings and they are stricken from the record of the case. For the reasons set forth below, the Defendant's Motion for Summary Judgment is GRANTED.

On March 18, 2009, Debtor PMC Marketing Corporation filed a voluntary chapter 11 bankruptcy petition. Subsequently, Debtor's bankruptcy case was converted to a chapter 7 on May 20, 2010, and Noreen Wiscovitch Rentas was appointed as the Chapter 7 Trustee ("Plaintiff"). Defendant Villa Blanca Shopping Center ("Villa Blanca") is the owner of a shopping center located in Caguas, Puerto Rico ("Caguas Shopping Center"). On June 1, 1985, First Caparra Investment Corporation[1] and Farmacias Moscoso Incorporated[2] executed a lease agreement for store number 12 at the Caguas Shopping Center. Debtor leased store number 12 for the purpose of conducting business under the name of "Farmacias El Amal." The executed lease agreement demonstrated a monthly rent amount of $10,457.61 for the premises located at the Caguas Shopping Center. Although Debtor maintained its monthly rent payments to Villa Blanca prior to its bankruptcy filing, at the time of its bankruptcy filing, Debtor owed Villa Blanca $48,515.40 in unpaid monthly rents. On January 13, 2009, within the 90 day period prior to its bankruptcy filing, Debtor made a rent payment of $10,457.61 to Villa Blanca. Subsequently, Plaintiff filed an adversary proceeding against Villa Blanca on March 2, 2012 in regards to the above transfer. On April 5, 2012, Villa Blanca filed an answer to such adversary proceeding. Defendant's Motion for Summary Judgment and Plaintiff's Opposition and Counter Motion for Summary Judgment followed.

The role of summary judgment is to look behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required. Under Federal Rules of Civil Procedure, Rule 56(c), made applicable in bankruptcy by Federal Rules of Bankruptcy Procedure, Rule 7056, a summary judgment is available if the pleadings, depositions, answers to interrogatories,

---

[1] Debtor is the successor in interest of Farmacias Moscoso Incorporated.

[2] Villa Blanca is the successor in interest to First Caparra Investment Corporation.

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). As to issues on which the movant, at trial, would be compelled to carry the burden of proof, it must identify those portions of the pleadings which it believes demonstrates that there is no genuine issue of material fact. In re Edgardo Ryan Rijos & Julia E. Cruz Nieves v. Banco Bilbao Vizcaya & Citibank, 263 B.R. 382, 388 (B.A.P. 1st Cir. 2001). A fact is deemed "material" if it potentially could affect the outcome of the suit. Borges, 605 F.3d at 5. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. at 4.

In the summary judgment motion presently before the court, Defendant argues that there are no genuine issues as to any material facts and that therefore the moving party is entitled to judgment as a matter of law. Defendant alleges that Plaintiff had the duty to present a fair, accurate and complete record to which Plaintiff has the initial responsibility of informing the court the basis for its motion. Defendant points to the Plaintiff's complaint which indicated that there was little information regarding transfers because of the Debtor's failure to provide documentation. Consequently, Plaintiff only provided a copy of a check dated January 13, 2009 in the amount of $10,457.61 to the Defendant. Thus, Plaintiff's initial allegation of such transfer in the amount of $20,915.22 is inaccurate without further supporting evidence. Defendant alleges that pursuant to 11 U.S.C. § 547(b), a Trustee can avoid any transfers of an interest of the debtor in property if five conditions are satisfied unless one of the seven exceptions defined in 11 U.S.C. § 547(c) is

applicable. Amongst these exceptions under 11 U.S.C. § 547(c)(2)(A)-(B) transfers originally made in the ordinary course of business or financial affairs of the debtor and the transferee, or transfers originally made according to ordinary business terms are excepted from trustee's avoidance powers as preferential if the underlying debt was originally incurred in the ordinary course of business or financial affairs of the debtor and the transferee. Defendant's argument that such transfer was made within the ordinary course of business is two-fold. First, acknowledging what counts in ordinary course of business is a factual inquiry, Defendant argues that the Debtor's alleged preferential transfer was made in its ordinary course of business with the Defendant. The alleged preferential transfer was a monthly rent payment that was made in accordance to the June 1, 1985 lease agreement between the Debtor as the lessee, and the Defendant as the lessor. Further, Defendant argues that such transfer was vital and necessary for the Debtor to maintain possession of its leased premise in order to continue its operation. Second, recognizing that such analysis should be viewed from the Debtor's perspective, Defendant argues that as seen in the Tenant's Ledger, Debtor is known to have a pattern of both regular and late payments, and that such late payment of rent is considered to be made within the ordinary course of business for the purpose of 11 U.S.C. § 547(c). Conclusively, Debtor's January 13, 2009 payment was made within the ordinary course of business to the Defendant and thus the Trustee cannot avoid such transfer.

In opposition, Plaintiff points out that it does not have to conclusively resolve the disputed issue at hand in order to prevail in a summary judgment motion. Therefore, it only needs to show that evidence supporting the dispute is such that a judge or jury is required to resolve the differing versions at trial. Plaintiff established that $20,915.22 is the correct amount as demonstrated by Debtor's bank statements as Debtor made two monthly payments of $10,457.61 totaling $20,915.22

in the months of January and February of 2009 during the preference period. While acknowledging that under 11 U.S.C. § 547(c), payments made during the preference period, but in the ordinary courses of business of the parties and the industry cannot be avoided, Plaintiff argues that the Defendant makes no allegation that the payments were made in accordance with the ordinary business terms of the industry. Thus, Defendant fails to provide evidence that the general practice in the industry is allowing a lessee to make late payments and continue accumulating arrears. Summarily, Plaintiff argues that in order for the ordinary course of business defense to prevail, Defendant would have to establish that the industry generally (1) accepts late payments; **or** (2) sits idly by while a lessee continues to accumulate arrears; **and** (3) accepts the specific length of the delay in the late payment made by the Debtor.[3] Plaintiff further argues that even if the leasing industry generally accepts late payments, the industry does not generally accept continuous late payments where the lessee is over 4-5 months in arrears[4]. Since the Defendant did not establish the test as laid out above, Debtor's January and February 2009 payments were not made within the ordinary course of business. Conclusively, Defendant argues that whether the leasing industry generally accepts late payments and continued arrears and whether Debtor had a clear pattern of late payments are still genuine issues of material fact to be established by the trier of fact.

After reviewing the arguments of the parties, and the relevant law, this court concludes that there are no genuine issues as to material fact and that the moving party is entitled to judgment as a

---

[3] This prong was drawn from the Plaintiff's contention that Defendant's statement of facts demonstrated that the leasing industry generally accepts late payments from clients or that the industry sits idly by while as it continues to accumulate arrears from its lessee/tenants.

[4] In justifying such claim, Plaintiff points out that from a brief review of the payments made by the Debtor during the 18 months prior to the last payment to the Defendant demonstrate that there is no such pattern of late payments. According to the Plaintiff, the only discernable patterns are as follows: (1) Debtor made

matter of law. The issues in this instant case hinge on the ordinary course of business defense to a trustee's avoidance powers under 11 U.S.C. § 547(c)(2), thus the court shall start its analysis here. This defense provides a safe harbor exception from the trustee's avoidance powers for specific preferential payments. Under § 547(c)(2)5, in order to establish this defense, Defendant bears the burden of proving two out of the three elements by a preponderance of the evidence:

> (c) The trustee may not avoid under this section a transfer
> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, **and** such transfer was;
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; **or**
> (B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2); 11 U.S.C. § 547(g); In re Healthco Int'l, Inc., 132 F.3d 104, 109 (1st Cir. 1997); Advo-System, Inc. v. Maxway Corp., 37 F.3d 1044, 1047 (4th Cir.1994); Sulmeyer v. Suzuki (In re Grand Chevrolet, Inc.), 25 F.3d 728, 732 (9th Cir.1994); Jones v. United Sav. & Loan Ass'n. (In re U.S.A. Inns of Eureka Springs, Ark., Inc.), 9 F.3d 680, 682 (8th Cir.1993).

This Congressional statutory change in the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") demonstrates that creditors no longer have to meet all three prongs under § 547(c)(2) but merely the first and second prongs[6] **or** the first and third prongs.

---

late payments on different days of the month; (2) in some months Debtor made no payments; and (3) in other months Debtor made 2 payments.

[5] Post-BAPCPA, Congress reorganized the provisions of § 547(c)(2) so that Creditors will only need to meet the first and either the second or the third requirement. The changes of the provisions are as follows: (1) § 547(c)(2)(A) is now part of § 547(c)(2); (2) § 547(c)(2)(B) is now renumbered as § 547(c)(2)(A); and (3) § 547(c)(2)(C) is now renumbered as § 547(c)(2)(B). For the purpose of this Court's analysis, the post-BAPCPA re-numbered provisions will be used.

[6] For the purpose of the analysis, § 547(c)(2) is the "first prong;" § 547(c)(2)(A) is the "second prong;" and § 547(c)(2)(B) is the "third prong."

The ordinary course of business exception thrives from the core of bankruptcy preference law. As such, this exception tries to strike a dragon-fly landing-like balance between shielding payments received by creditors to the extent that those creditors who remain committed to a debtor during times of financial distress and maintaining an elastic area of flexibility to creditors in dealing with the debtor, provided that the steps taken are consistent with customary practice among specific industry participants. Congressional records is consistent with this interpretation as it reveals that the purpose of this exception is to "leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or [its] creditors during the debtor's slide into bankruptcy." H.Rep. No. 595, 95th Cong., 1st Sess. 373 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 6329.

Although it is unclear from the documents filed by both parties exactly which prong(s) of the ordinary course of business exception are in dispute, the court will nonetheless address all three prongs. Sections 547(c)(2) and § 547(c)(2)(A) in relevant part, state that: "The trustee may not avoid under this section a transfer to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business *or* financial affairs of the debtor and the transferee and such transfer was—(A) made in the ordinary course of business or financial affairs of the debtor and the transferee."  Under the first two prongs of § 547(c)(2) and § 547(c)(2)(A), Defendant simply needs to demonstrate by a preponderance of the evidence that the specific transaction was ordinary as between the parties. In this instant case, the facts substantiate that Plaintiff's payments were applied against an antecedent debt resulting from a lessor/lessee relationship whereby Debtor leased its business operation property from the Defendant. Matter of Midway Airlines Inc., 69 F.3d 792, 797 (7th Cir. 1995). Although the Plaintiff argues otherwise, the Debtor's Tenant's Ledger reveals an inconsistent

payment date and thus demonstrates that the lessor/lessee payment relationship between the Debtor and the Defendant seemed to be a rather flexible one. Therefore, Defendant has met the burden for both § 547(c)(2) and § 547(c)(2)(A).

In this instant case, Plaintiff points out that the Defendant fails to present any evidence to justify § 547(c)(2)(B) and thus cannot qualify for the ordinary course of business exception. This argument would have had merit had congress not changed the language of § 547(c)(2).

Accordingly, there are no genuine issues of material fact and thus a trial is unnecessary. With no genuine issues of material facts at hand, this Court will not address whether $10,457.61 or $20,915.22 could be avoided by the Trustee since the Defendant has established the standard of ordinary course of business exception. Summarily, Plaintiff failed to present sufficient evidence to demonstrate that there is a genuine issue of fact in dispute for a trial, or that summary judgment should be granted in her favor.

WHEREFORE, IT IS ORDERED that Defendant's Motion for Summary Judgment shall be, and it hereby is, GRANTED. The adversary case is dismissed. Clerk to enter judgment.

SO ORDERED

San Juan, Puerto Rico, this 2nd day of December, 2014.

Brian K. Tester
U.S. Bankruptcy Judge